## RUSSELL v PENN MUTUAL LIFE INSURANCE CO.

Ohio Appeals, 1st Dist, Hamilton Co

No 5997. Decided Oct 13, 1941

Spangenberg & Spangenberg, Cincinnati, and Albert C. Keeler, Cincinnati, for appellee.

Maxwell & Ramsey, Cincinnati, and Hugh M. Ritchey, Cincinnati, for appellant.

**OPINION**

By ROSS, J.

This appeal is upon questions of law and presents two principal questions for our consideration, both related to the action of the trial court upon admission of evidence offered by the defendant. At a previous trial of the case such evidence was admitted by the trial court. Upon consideration of a motion for new trial, the court concluded that it had erroneously admitted such evidence and granted the motion for new trial. Upon the second trial of the case, the trial now here under consideration, the trial court excluded the evidence tendered by the defendant and rendered judgment for the plaintiff. The trial was to the court without a jury. Proper proferts were made of the answers to questions.

The plaintiff in this case is the beneficiary in a policy issued by the defendant upon the life of her deceased husband. This policy, issued without medical examination, contained the following clause:

"This Policy and the application therefor, a copy of which is attached hereto, constitute the entire contract between the parties. All statements made by the insured or on his behalf shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this Policy or be used as a defense against any claim hereunder, unless it be contained in the written and printed application, and a copy of such application be attached to this Policy when issued."

In the application of the insured attached to the policy appears the following, just next above the signature of the insured:

"I agree that the statements and answers to the questions printed above are full. complete, and true; that upon them I base my application for insurance; that they shall be regarded as part of the contract if and when the policy is issued; that the insurance herein applied for shall not be in force unless or until the policy shall be delivered to me and the first premium actually paid during my good health; that agents have no authority to modify. alter or enlarge contracts and that acceptance of any policy issued on this application will constitute a ratification by me of any corrections or additions to the application made by the Company in the space provided 'For Home Office Endorsements Only'."

One of the defenses alleged by defendant was that the insured was not in sound health at the time the policy was delivered to him and the first premium paid.

At the trial, the defendant was permitted to introduce a duly certified copy of the certificate of death issued by the Board of Health, Bureau of Vital Statistics of Cincinnati, Ohio. This certificate gave the cause of the death of the insured as "Cardiac hypertrophy, Myocardial insufficiency, Auricular fibrillation". By virtue of §231 GC, this certificate is "prima facie evidence in all courts and places of the facts therein stated".

There is no evidence in the record attempting in any way to impeach the validity of the certificate or any fact stated therein.

The defendant, after the certificate was in evidence sought to introduce the testimony of certain physicians from whose professional opinions (included in proferts) it is to be deduced that the insured could not have died from the disease mentioned in the death certificate and have been in sound health at the date of the issuance of the policy only eight months prior to his death.

With the weight of this evidence or the credibility of the witnesses, we have no concern. The question directly pre-

518

sented by the action of the court in excluding such professional expert opinions raise only the questions of competency and relevancy. Certainly, there can be no question that such evidence was relevant to the issues █ presented, for if the insured was not in sound health when the policy was issued, whether he knew it or not the policy was not in effect.

In **John Hancock Mutual Life Ins. Co. v Luzio, 123 Oh St 616**, at page 630 of the opinion the Court say:

"The policy contained a proviso that it should not take effect unless the insured 'shall be alive and in sound health'. Had the insured not been alive, and had the agent known it, can it be claimed that the agent's knowledge would make the company liable? Under the terms of the policies, life and sound health must both subsist before the policies take effect."

See also: **Metropolitan Life Ins. Co. v Howle, 62 Oh St 204; Acacia Mutual Life Ins. Co. v Koch, 57 Oh Ap 125; Mutual Life Ins. Co. etc. v Connell, 43 Oh Ap 415; Wills Sr. etc. v National Life & Accident Ins. Co., 28 Oh Ap 497.**

Was such evidence otherwise competent? No privilege is here involved. The physicians were giving expert opinions upon facts admitted in evidence. They were not testifying as to any communication made by the insured. The authorities noted indicate that neither §11494, nor §9391 GC, have any application to the competency of this evidence dealing as it does with the sole matter of the soundness of the health of the insured at the time the policy was issued. This matter has nothing to do with the truth or falsity of statements made by the insured and hereinafter considered in connection with other rulings of the court upon evidence tendered by the defendant.

Clearly. then this evidence was relevant, competent, and material. It should have been admitted. Its exclusion by the trial court constituted error, prejudicial to the case of the defendant, requiring a reversal of the judgment.

The other question involves the question of the known falsity of statements made by the insured in his application. One of the answers indicated the number of times the insured had been attended by a physician previous to the execution of the application.

The defendant sought to introduce the testimony of physicians who had attended the insured, and in order to prove as required by §9391 GC, that such statements were "wilfully false", "fraudulently made", were "material and induced the company to issue the policy, and that but for such answers the policy would not have been issued", sought by inquiry from them to show the nature of the ailments treated. This evidence comes █ squarely under the inhibition of §11494 GC. It is of no consequence by whom such physicians were employed if by act of the insured they were visited by him as his physicians. The case of **Dewert v Cincinnati Milling Machine Co., 15 Abs 268,** involved an entirely different state of facts, the court finding in that case that the employe did not consult the company doctor as his physician. In any event, the effect of this decision will not be extended beyond the scope of the facts involved therein. See also: 28 R. C. L. 540.

The proferts in the instant case indicate that the insured consulted the physicians in their professional capacity, and submitted himself as a patient.

It is claimed that the plaintiff waived the privilege surrounding such evidence by introducing evidence █ of a physician bearing on the same matter sought to be covered by the evidence excluded. Such might well be the rule. Our concern is that it is not. The statute, §11494 GC, provides the only manner in which a waiver may be held to exist. In the instant case there is no "express consent" of the patient and the "patient" has not voluntarily testified. **Harpman v Devine, Rec'r., 133 Oh St 1;**

**Baker v Industrial Commission, 135 Oh St 491.**

It is again claimed the waiver of the beneficiary is sufficient to admit the otherwise privileged evidence. This court has stated definitely that it will not extend the rule in **Industrial Commission v Warneke, 131 Oh St 140,** further than as limited by the Ohio Supreme Court to cases involving Workmen's Compensation. See **Thompson v National Life & Accident Insurance Co.** No. 810, Butler County, Court of Appeals, decision by this Court May 14, 1941. (34 Abs 419). See also: **Parisky, Admr. v Pierstorff, 63 Oh Ap 503.**

It is further claimed by the defendant that it had a right to show, merely that the insured had consulted physicians at times other than those mentioned in his application, and that such evidence is not a violation of the privilege, in that no communication is involved. This rule seems to be supported by respectable authority. Wigmore on Ev. 3rd Ed. Sec. 2382. See also: Leeds v Prudential Insurance Co., 128 Neb. 395 (96 A. L. R. 1414).

In any event physicians were permitted to testify without objection as to such visits not disclosed in the answers made by the insured in his application. But such answers are not fatal to recovery by the beneficiary unless under §9391 GC, they were wilfully false, fraudulently made, material, and induced the company to issue the policy, and that but for such answers the policy would not have been issued. A Dr. Hoare was called as "Assistant Medical Director" and requested to testify as to the attitude of the company toward the policy had the visits to physicians other than those mentioned by the insured in the application been known. The trial court excluded the answer of the doctor. The profert shows that in the opinion of the physician the company would not have issued the policy. There is, however, before us, no evidence or profert, indicating that such answers were wilfully false, fraudulently made, or so material as to warrant the conclusion which

Dr. Hoare expresses as his opinion, that the company would not have issued the policy. Without waiver, it would be impossible to show the nature of the illnesses of which the insured was complaining when making such visits. It is asserted that one instance involved merely a piece of glass in the hand of the insured. In the event that the extra visits were not shown to possess the characteristics implied in the statute and the answers to have had the false and fraudulent character required by the statute, the court would have been required to instruct the jury to disregard such evidence of visits, and in passing upon the facts, as was the case here, diregard the same.

While it is our conclusion that the defendant should have the opportunity of proving if it can that the insured made other visits than those listed and that the statements of the insured were fraudulent and not due to mere inadvertence or forgetfulness, still in the absence of evidence or profert to this effect the mere fact that such extra visits were made would not in itself be sufficient to require a reversal of the judgment. Even a statement of an officer of the company that the policy would not have been issued under the circumstances does not fully meet the requirements of §9391 GC. It is difficult to see how such result could occur unless the nature of the illnesses were shown and in the absence of waiver it is also difficult to see how the nature of such illnesses could be shown by evidence that would not violate the provisions of §11494 GC. We find on this charge of error no prejudice to the defendant. However, as before stated, error prejudicial to the defendant did intervene in the exclusion of the opinion evidence of the physicians on the condition of the health of the insured at the time the policy was issued, based upon facts set out in the death certificate.

For this reason, the judgment of the

trial court is reversed and the cause remanded for a new trial.

MATTHEWS, PJ., & HAMILTON, J., concur.