NATIONWIDE MUTUAL INS. CO., APPELLANT, *v.* JACKSON ET AL., APPELLEES.

[Cite as Nationwide Mutl. Ins. Co. v. Jackson, 10 Ohio App. 2d 137.]

138

(No. 28184—Decided May 11, 1967.)

*Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. Robert C. McFadden,* for appellant.

*Messrs. Spangenberg, Hasenflue, Shibley & Traci* and *Mr. John G. Lancione,* for appellees.

SILBERT, J. This is an appeal on questions of law from a summary judgment granted on motion of defendants, Stella M. and Janie Jackson, against plaintiff, Nationwide Mutual Insurance Company, in its declaratory judgment action brought in the Court of Common Pleas of Cuyahoga County to construe certain provisions of an insurance policy issued by the plaintiff.

The relevant facts involved herein are as follows: Plaintiff, appellant herein, Nationwide Mutual Insurance Company, entered into a contract of insurance on a 1964 Dodge automobile with one Ollie Jackson, husband of Stella M. Jackson and father of Janie Jackson, the defendants, appellees herein. The insurance contract included a provision entitled "Family Protection —Uninsured Motorist Coverage" which allows recovery from the carrier for bodily injuries sustained by the insured as the result of an accident caused by the negligence of an uninsured motorist. Among the conditions of this provision is the following:

"2. * * * The injured person shall submit to physical examinations by physicians selected by the company when and as

often as the company may reasonably require and he, or in the event of his incapacity, his legal representative, or in the event of his death his legal representative or the person or persons entitled to sue therefor, *shall upon each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records.*" (Emphasis added.)

When the defendants, Stella M. Jackson and Janie Jackson, sustained personal injuries in an automobile accident with a motorist with no insurance coverage, they made a claim against Nationwide under the uninsured-motorist clause of the above-mentioned policy. Nationwide thereupon requested them to execute the following authorization:

"I hereby consent and request that the bearer be permitted to examine and obtain copies of all hospital and medical records of every sort and kind, *interview all doctors and other attendants and all employers and former employers, regarding all matters relating to examination, diagnosis, care and treatment of myself, earnings and loss of earnings.*" (Emphasis added.)

Although the defendants furnished certain medical reports to Nationwide, they refused to execute this authorization. Nationwide alleges that its purpose in requesting this authorization was to enable it to conduct private interviews and have oral discussions of the medical aspects of this claim with the physicians who treated the defendants.

Upon defendants' refusal to execute this authorization, Nationwide instituted a declaratory judgment action alleging that this refusal to allow "* * * the plaintiff's representatives to interview the treating doctors * * *" was a violation of the terms of the policy and, therefore, there was no further coverage available to the defendants. Nationwide also sought an order restraining the defendants from proceeding further with an action before the American Arbitration Association pursuant to the terms of the contract of insurance. The trial court, however, upon defendants' motion for summary judgment, held that "* * *the authority in its present form requested by the company allowing it to conduct an oral interrogation of the policyholder's physician may be refused by the policyholder without prejudice to his claim for coverage under the uninsured motorist's protection."

Initially it must be noted that we are dealing here with privileged communications betwen a physician and a patient. While at common law no protection whatever was afforded for the confidences of a sick or injured person, DeWitt, "Privileged Communications Between Physician and Patient," 10 Western Reserve Law Rev. 488, 492 (1959), modern statutes provide that a physician cannot testify as to his conversations with a patient, *e. g.,* Section 2317.02, Revised Code, and it has recently been held in Ohio that *any* unauthorized disclosure by a physician of privileged information is against public policy and the offending physician may be held liable in damages. *Hammonds* v. *Aetna Casualty & Surety Co.* (1965), 243 F. Supp. 793. See, also, 41 American Jurisprudence 196, 197, Physicians & Surgeons, Section 75. The sound reasons which are the basis for the physician-patient privilege are readily apparent. It is in the best interests of patients to be totally frank in their discussions with physicians, as this will enable the physician to make a correct diagnosis and prescribe a safe treatment. DeWitt, "Privileged Communications Between Physician and Patient," 10 Western Reserve Law Rev. 488 (1959); *Hammonds* v. *Aetna Casualty & Surety Co.* (1965), 243 F. Supp. 793, 797. Furthermore, the Ohio Supreme Court has stated that the purpose of this privilege is also *defensive* in nature in that it protects the patient from the repetition of statements which he may have made when he was not in complete control of his faculties. *Baker* v. *Industrial Commission* (1939), 135 Ohio St. 491.

A patient may, of course, without violating public policy voluntarily waive this privilege, *New York Life Ins. Co.* v. *Snyder* (1927), 116 Ohio St. 693, and this may be done in advance by a clause to that effect in an application for or a policy of insurance. 58 American Jurisprudence 251, Witnesses, Section 444. However, such a waiver must be in express terms, *Ausdenmoore* v. *Holzback* (1914), 89 Ohio St. 381; 97 Corpus Juris Secundum 859, Witnesses, Section 310, and normally a court will closely scrutinize the waiver in order to adequately protect the interests of the insured. Although there appears to be little case law in Ohio on this subject, a review of the cases from other jurisdictions clearly demonstrates the application of this approach. For example, see *Pride* v. *Inter State Business Men's Acc. Assn. of Des Moines* (1927), 207 Iowa 167, 216 N. W. 62

(wherein the court held that a waiver in an insurance policy relative to obtaining information possessed by physicians who had been consulted by the insured did not constitute a waiver as to communications made to physicians after such time); *In re De Neef* (1941), 42 Cal. App. 2d 691, 109 P. 2d 741 (wherein the court held that a physician-patient waiver provision in a life insurance policy would be deemed to have intended that which was written and nothing more and hence would not operate as a waiver of other privileges); *Noble* v. *United Benefit Life Ins. Co.* (1941), 230 Iowa 471, 297 N. W. 881 (wherein the court held that a provision in an insurance policy authorizing a physician to "disclose to said insurance company any information thus required" did not waive the provisions of the state statute and thereby allow the physician to testify as to information learned, although he could disclose it); and *Geare* v. *United States Life Ins. Co.* (1896), 66 Minn. 91, 68 N. W. 731 (wherein the court held that a provision in an application for insurance, whereby the applicant waived all provisions of law forbidding any physician or surgeon who had attended him from disclosing any information which he had acquired, applied only to the past and did not include information thereafter acquired by the physician attending the insured).

With this background in mind, reference to the clause in question demonstrates that oral interviews with the treating physician are clearly not specifically within its context. It is well settled that a court will not rewrite or distort a contract under the guise of judicial construction when a contract is unambiguous. 30 Ohio Jurisprudence 2d 216, Insurance, Section 205. Furthermore, even if there is some ambiguity due to the fact that the contract says only "reports" rather than "*written* reports," in general legal usage it is accepted that medical reports means *written* medical reports. Furthermore, the result so obtained by this definition is buttressed by the well-settled rule that where there is any doubt or ambiguity in the language of an insurance contract it will be strictly construed against the insurer and in favor of the insured. *United States Fidelity & Guaranty Co.* v. *Guenther* (1930), 281 U. S. 34, 37; *Greulich* v. *Monnin* (1943), 142 Ohio St. 113, 116, *Bellish* v. *C. I. T. Corp.* (1943), 142 Ohio St. 36; 6 Ohio Jurisprudence 2d 247, Automobiles, Section 73. In light of these rules and with

the above-mentioned background in mind, we have no hesitancy in finding that the trial court ruled correctly in refusing to find that an oral interview with the treating physician was permissible under the above-quoted clause of the insurance contract.

Plaintiff contends, however, that, since the instant case is a problem in contract and not in tort (as such problems normally are), the usual rules regarding such disclosures and the construction of such clauses should not be so strictly applied. However, a careful reading of the intricacies of this argument demonstrates, upon reflection, that it is much like the labors of the mythical Sisyphus, for the harder you try to push the stone up the hill, the farther back it rolls. There can be no doubt that whether we assign this problem to the area of contract or to the area of tort is largely immaterial, as the parties involved herein are already adverse—just as they would be in the ordinary negligence action. In fact, the plaintiff has stated in its original petition that this case is already docketed for arbitration. Therefore, we can see no merit whatsoever in plaintiff's contention.

For the foregoing reasons, we determine, and therefore hold, that under the clause contained in plaintiff's policy of insurance there is no requirement that the insured defendants permit the insurer to conduct private oral conversations with the treating physicians.

*Judgment affirmed.*

WASSERMAN, P. J., WHITE, J., concur.