EVANS, APPELLANT, v. OCCIDENTAL LIFE INSURANCE CO. OF NORTH CAROLINA, APPELLEE.

(No. C-810788—Decided July 7, 1982.)

*Mr. Edward J. Utz,* for appellant.

*Messrs. Frost & Jacobs* and *Mr. John J. Finnigan,* for appellee.

BLACK, J. Plaintiff-appellant, Emmanuel Evans ("Evans"), sued Occidental Life Insurance Company of North Carolina ("Occidental") to collect $30,000 of life insurance claimed payable to him as beneficiary under a policy on the life of Evans' wife, Evelyn L. C. Evans ("Evelyn"). On motion, Occidental was granted summary judgment by the trial court. Evans alleges in the first assignment of error that the court erred in granting summary judgment, and in the second, that the court erred in admitting for consideration under the motion for summary judgment both the testimony of Evelyn's treating physician and her hospital records. The second assignment appears to be subsumed under the first, because the summary judgment would be erroneous if the admissible evidence was insufficient to establish that Occidental was entitled to judgment as a matter of law. Nevertheless, this appears to be a separate error "specifically pointed out in the record." App. R. 12(A). We will consider it first, noting at this point that we find no error as claimed in either assignment.

We summarize the undisputed facts in chronological order. Evans met Evelyn in 1977 at their place of employment. Both were, and remained, residents of Cincinnati. In December 1977, Evelyn was hospitalized and Dr. Ambrose H. Clement surgically removed a malignant tumor from her left ovary and performed a hysterectomy. The doctor testified that Evelyn was not in good health at any time after her discharge from the hospital on December 31, 1977. The cancer recurred and required another operation (in September 1978) and chemotherapy thereafter.

Meanwhile, Evans enlisted in the United States Army and was stationed in West Germany. Returning to Cincinnati in July 1978, he and Evelyn were married on July 11, 1978. Evelyn suggested to Evans that he "take out some insurance on her." Immediately after his return to Augsburg, West Germany, Evans contacted Wade A. Mercer, an insurance agent for Occidental, and on July 17, 1978, an application was completed for the policy on Evelyn's life. She remained in Cincinnati. The policy was issued by Occidental on September 11, 1978, from its headquarters in North Carolina. The monthly premiums were paid by deductions from Evans' pay.

Evelyn died on March 11, 1979, six months after the policy was issued. Evans refused to fill out Occidental's standard

claim form but presented a death certificate signed by Dr. Clement, which indicated the immediate cause of death was bronchopneunomia (three days duration) as a consequence of carcinoma of the ovary (one year duration).

Evans claimed in his answers to interrogatories and in his affidavit that he had no knowledge of Evelyn's hysterectomy or her terminal illness, that she never indicated to him that she was in anything but good health, and that in his opinion, she was in good health when he left her in July 1978. Mercer, the insurance agent, did not know Evelyn or have any information about her health except what was communicated to him by Evans.

There is a dispute between Evans and Mercer about how the application was completed, Evans claiming he did not read it and simply gave Mercer some answers, relying on Mercer to complete the form. Mercer states that he obtained every answer from Evans orally before writing it on the application. The application reveals absolutely nothing about Evelyn's operation, treatment or ill health. The question about whether she was in good health is answered in the affirmative. The concluding paragraph of the application reads in full as follows:

"We hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of us or our health, to give to the Occidental Life Insurance Company of North Carolina any such information. A photographic copy of this authorization shall be as valid as the original. We represent that the answers to the foregoing questions are correct and true to the best of our knowledge and belief. We agree that the insurance applied for shall not take effect until issued by the Company and delivered to and accepted and received by us, and *the first full premium paid during the Proposed Insured's good health,* except as provided for in the receipt for advance payment of the first premium." (Emphasis added.)

It is undisputed that Evans signed both his name and Evelyn's, copying her signature from the marriage license.

As noted, Evans claims in his second assignment of error that Dr. Clement's testimony about Evelyn's health and the records of her hospitalization of December 1977 (as well as in an earlier and a later hospitalization) fall within the physician-patient relationship and cannot be considered under R.C. 2317.02(B).[1] He asserts that during her life she did not expressly consent to the physician's testimony, and that Evans' consent has no effect because it was given before her death and not after. We disagree.

While we agree with both parties that the Ohio Rules of Evidence apply in this case[2] (whether or not North Carolina law governs the substantive question of the validity of the insurance policy), we hold

---

[1] R.C. 2317.02 reads in pertinent part as follows:

"The following persons shall not testify in certain respects:

"* * *

"(B) A physician concerning a communication made to him by his patient in that relation or his advice to his patient but the physician may testify by express consent of the patient or if the patient is deceased by the express consent of the surviving spouse or the executor or administrator of the estate of such deceased patient or if the patient voluntarily testifies the physician may be compelled to testify on the same subject, or if the patient, his executor or administrator, files a medical claim, as defined in division (D)(3) of section 2305.11 of the Revised Code, such filing shall constitute a waiver of this privilege with regard to the care and treatment of which complaint is made. The provisions of this division apply to doctors of medicine, doctors of osteopathic medicine, and doctors of podiatric medicine."

[2] *Pennsylvania Co.* v. *McCann* (1896), 54 Ohio St. 10.

that under the circumstances of the instant case, the privilege was waived.[3] Evans waived it. He applied for the insurance as Evelyn's husband and as sole beneficiary. The policy was issued without a physical examination of Evelyn, and the insurance company had no knowledge or information about the adverse state of her health. The agent did not even see Evelyn. Evans agreed that all information that could be obtained from Evelyn's physician and her medical records would be available to Occidental. We believe that his "express consent" as spouse of the patient, although given before her death, must be held to remain effective after her death. See *Nationwide Mut. Ins. Co.* v. *Jackson* (1967), 10 Ohio App. 2d 137 [39 O.O.2d 242]. R.C. 2317.02 is to be strictly construed. *Weis* v. *Weis* (1947), 147 Ohio St. 416 [34 O.O. 350]. We decline to allow the statutory privilege to be used as a shield to prevent the discovery of the truth about a factor (good health of the insured) crucial to the determination of the validity of a claim asserted by the spouse, who agreed in advance that the medical history and records would be available.

The evidence obtained from Dr. Clement and Evelyn's hospital records was properly considered by the court. The second assignment of error has no merit.

Turning to the claim of the first assignment of error, Evans claims that genuine issues of material fact exist and that Occidental is not entitled to judgment as a matter of law. Again, we disagree.

Our first step is to determine whether the policy is to be interpreted under the laws of North Carolina or Ohio. We believe, as appellant concedes in his brief, that North Carolina law controls. That state has the most significant relationship to the transaction, because that is the

state in which occurred the last act necessary to make the contract, and from which performance would be made. *Heaton* v. *Eldridge & Higgins* (1897), 56 Ohio St. 87; *Knowlton* v. *Erie Railway Co.* (1869), 19 Ohio St. 260; 12 Appleman, Insurance Law and Practice (1981), Chapter 258. Admittedly, the insurance application was completed and signed in West Germany, and the insured and the beneficiary were residents of Ohio, where payment would have been made. Nevertheless, the policy was issued as a result of an application presented, and a decision made, in North Carolina. Performance would have initiated from that state. It has the most significant contacts.

Under North Carolina law, the policy was void because the "good health" clause was violated. We refer to the last sentence of the insurance application above the signatures affixed by Evans (set forth *supra*), stating in essence that the persons signing the application agreed that the insurance shall not take effect until "the first full premium [is] paid during the Proposed Insured's good health." The North Carolina rule is that when a policy is issued without a prior medical examination of the insured, the existence of the insured's good health at the time the policy is issued and becomes effective is a condition precedent, nonoccurrence of which renders the policy void, irrespective of any knowledge or any representations made by the insured, the payor or the beneficiary. *Huffman* v. *State Capital Life Ins. Co.* (1970), 8 N.C. App. 186, 174 S.E.2d 17. Similar clauses have been widely interpreted to create conditions precedent to the policy's effectiveness, and North Carolina is in line with the majority rule. 43 American Jurisprudence 2d 295 *et seq.*, Insurance, Sections 234 and

---

[3] Appellant cites *Russell* v. *Penn Mut. Life Ins. Co.* (1941), 70 Ohio App. 113, and *Thompson* v. *Natl. Life & Acc. Ins. Co.* (1941), 68 Ohio App. 439, for the principle that the privilege is waived only by the patient's express consent or by the patient's voluntary testimony. That is no longer the wording of R.C. 2317.02(B), which now provides for waiver by other means.

235; Annotation, 60 A.L.R.2d 1429, 1440-1444, Sections 8-10.[4].

Evans points to another North Carolina case as authority for his claim that even though the policy contained a "good health" clause, once it was delivered to the insured or the beneficiary without qualification, the insurance company cannot raise the defense of the "good health" clause, in the absence of fraud. *Natl. Life Ins. Co.* v. *Grady* (1923), 185 N.C. 348, 117 S.E. 289. We believe the case is clearly distinguishable because there the insurance agent, who held the policy awaiting payment of the first premium, delivered it to the insured's neighbor on the insured's behalf after the neighbor had stated that the insured was very sick that day. The North Carolina Supreme Court concluded its opinion by noting that the jury necessarily found "that on payment of the premium there was an unqualified delivery of the policy, the agent at the time having knowledge or notice of the conditions presented [*sic*]." *Id.* at 354. The policy was held to be in full force and effect. We do not believe that in the absence of any knowledge by the insurance company, its agents and employees, about the insured's health, the North Carolina law holds that delivery of a life insurance policy automatically precludes the life insurance company from asserting invalidity.

We are further persuaded that under another branch of North Carolina law, Occidental was not liable. North Carolina General Statute Section 58-30 reads in full as follows:

"All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and *a representation, unless material or fraudulent, will not prevent a recovery on the policy.*" (Emphasis added.)

Thus a material representation, if false, will prevent a recovery. We believe this is a rule of substantive law because it directly affects the validity, nature and effect of the policy.[5] This statute governs the validity of the policy *sub judice.*

North Carolina decisional law is that a material representation which is false will constitute sufficient grounds to invalidate the policy, without the necessity of proving fraud. *Tolbert* v. *Mut. Benefit Life Ins. Co.* (1952), 236 N.C. 416, 72 S.E.2d 915. There is no question about the materiality of the false answer about good health, or about the insurance company's policy of not issuing a policy to a person in Evelyn's condition. North Carolina also holds an insurance applicant to the written answers on the application as signed by the applicant, even though the applicant failed to read the answers prior to signing, as Evans now claims. *Thomas-Yelverton Co.* v. *State Capital Life Ins. Co.* (1953), 238 N.C. 278, 77 S.E.2d 692.

The first assignment of error has no merit because Occidental was entitled to judgment as a matter of law.

We affirm.

*Judgment affirmed.*

SHANNON, P.J., and DOAN, J., concur.

---

[4] This court has also followed this line of authority. *Russell* v. *Penn Mut. Life Ins. Co., supra,* fn. 3; *Acacia Mut. Life Ins. Co.* v. *Koch* (1937), 57 Ohio App. 125; *Billing* v. *Schreiner* (March 10, 1982), Hamilton App. No. C-810371, unreported.

[5] In *Connecticut General Life Ins. Co.* v. *Richardson* (1919), 11 Ohio App. 405, we held R.C. 3911.06 (then G.C. 9391) was a remedial or procedural statute that was applicable to determine whether a life insurance policy, admittedly a New York contract because it was countersigned and delivered there, was valid when the decedent's application contained false answers. We said the Ohio statute controls what answers may be used in evidence. The instant case is distinguishable because here the court has before it a law of a sister state that governs the validity, nature and effect of the contract, a factor absent in *Richardson.*