OPINION
Plaintiff-appellant, Dorothy L. Langley, appeals from a judgment of the Franklin County Court of Common Pleas granting the amended summary judgment motion of defendant-appellee, Federal Kemper Life Assurance Company ("Federal Kemper"). Because the common pleas court properly granted Federal Kemper's motion, we affirm the decision of the trial court.
On February 27, 1998, Willie Langley signed an application for life insurance through Federal Kemper and made an initial premium payment. In the application, Langley designated his wife, plaintiff, as the primary beneficiary. The life insurance application required Langley to answer questions about his personal habits, past medical conditions, and past medical treatment.
On April 21, 1998, subsequent to his life insurance application, Langley sought treatment from Charles B. Bertani, D.O. At his visit, Langley complained of an "on and off" cough for two months, a recent history of coughing up blood, and abdominal pain with occasional edema. After examining Langley, Dr. Bertani diagnosed gastritis, hemoptysis, and bronchitis. Dr. Bertani prescribed medication and referred Langley for a chest x-ray due to the history of coughing up blood.
On April 25, 1998, Langley underwent a chest x-ray. The x-ray indicated a mass in Langley's left chest area. The radiologist recommended a computerized tomography ("CT") scan as a further diagnostic test. A CT scan was performed five days later. The CT scan showed defendant had tuberculosis or necrotic neoplasm. A CT guided needle biopsy was suggested.
On May 11, 1998, Langley was evaluated by Elliot D. Crouser, M.D., of The Ohio State University Medical Center Pulmonary Clinic. Dr. Crouser noted an "obvious concern" of a malignancy and referred Langley for a diagnostic bronchoscopy to obtain cultures and biopsies for cytology. On May 15, 1998, Dr. Crouser performed a bronchoscopy. Three days after undergoing a diagnostic bronchoscopy, Langley received his life insurance policy and paid an additional required amount. No evidence in the record indicates Langley informed Federal Kemper of the medical treatment and procedures that he underwent subsequent to his life insurance application of February 27, 1998.
A bronchoscopy report, dated May 22, 1998, indicated a final impression of probable lung cancer with a recommendation to await the cytology reports of the lung biopsy. A pathology report dated May 27, 1998 reflected a diagnosis of "malignant cells present, at least carcinoma in-situ." Following the diagnosis, Langley underwent treatment for cancer. On November 28, 1998, Langley died.
On November 10, 1999, plaintiff, primary beneficiary of the insurance policy, filed a complaint in common pleas court. In her complaint, plaintiff alleged Federal Kemper breached its contract by wrongfully denying her life insurance claim. Plaintiff also sought punitive damages and attorney fees.
Federal Kemper answered plaintiff's complaint and counter-claimed, asserting the decedent (1) failed to comply with conditions precedent for the valid issuance of the insurance policy, and (2) fraudulently made willfully false answers in his insurance application. Federal Kemper also moved for an order in limine for permission to present evidence from the decedent's medical records and from his treating physicians. The trial court granted Federal Kemper's motion and issued an order in limine.
On October 27, 2000, Federal Kemper filed an amended motion for summary judgment, contending the decedent failed to comply with the conditions precedent for the valid issuance of the insurance policy. The trial court granted the motion in an entry filed on January 4, 2001.
Plaintiff timely appeals, assigning three errors:
 I. The Trial Court erred in granting Defendant's Motion for Summary Judgment and Amended Motion for Summary Judgment.
 II. The Trial Court erred in ruling O.R.C. § 3911.06 is inapplicable to the facts of this case.
 III. The Trial Court erred in granting Defendant's Motion in Limine and ruling that the physician-patient privilege under O.R.C. 2317.02 was waived thereby allowing the use of records and testimony from Willie C. Langley's treating physicians to support Defendant's Motions for Summary Judgment.
An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181.
Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. Id.; Vahila v. Hall (1997), 77 Ohio St.3d 421. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, supra, at 293; Vahila, supra, at 430; Civ.R. 56(E). See, also, Castrataro v. Urban (Mar. 7, 2000), Franklin App. No. 99AP-219, unreported.
Plaintiff's first and second assignments of error are interrelated, and we address them jointly. Together they assert the trial court erred in failing to apply R.C. 3911.06 and in granting Federal Kemper summary judgment. An examination of the language in decedent's application and policy is necessary because the decedent's alleged failure to fulfill conditions of the policy is the basis of Federal Kemper's amended motion for summary judgment and the trial court's decision granting it.
In "Part B: Agreement" of the life insurance application, the decedent agreed to the following:
 I (we) have read all the questions and answers in the application, including all required parts. All responses are true and complete to the best of my (our) knowledge and belief. I (we) promise to tell the Company of any change in the health or habits of the Proposed Insured that occurs after completing this application, but before the Policy is delivered to me (us) and the first premium is paid.
In a subsequent provision of the same part, the decedent also agreed that:
 4. (Except as provided in the Receipt, if given) the insurance applied for never takes effect unless, during the lifetime of the Proposed Insured: (a) the Policy has been issued, delivered to, and accepted by me (us); (b) the required first premium has been paid; (c) any amendments issued with the Policy have been completed and signed; all while the health and habits of the Proposed Insured remain as stated in this application.
Those provisions and the entire application were incorporated into the life insurance policy through item number one of "Part B: Agreement," which provides:
I (we) agree:
 1. This application, including all of its parts, will be the basis for and form part of the Policy[.]
Thus, according to express provisions contained within the life insurance application and the policy, any conditions within the application also must be construed as conditions of the policy.
In Metropolitan Life Ins. Co. v. Howle (1900), 62 Ohio St. 204, paragraph one of the syllabus, the Ohio Supreme Court determined that "Section 3625, Rev. St. [now R.C. 3911.06], applies to false answers to interrogatories in the application for a life insurance policy, but does not apply to conditions in the policy itself." See Aetna Life Ins. Co. of Hartford, Conn. v. Dorney (1903), 68 Ohio St. 151, paragraph two of the syllabus ("If a policy of insurance *** contains a stipulation *** the stipulation is available as a defense, notwithstanding sections 3625 [now R.C. 3911.06] and 3626, Rev. St., whose effect is limited to defenses founded on fraud or misstatement in the application"); see, also, Lumpkin v. Metropolitan Life Ins. Co. (1945), 75 Ohio App. 310, 312-313, affirmed, 146 Ohio St. 25 ("The stipulation upon which the defendant relies is in the policy. The defendant does not rely upon a fraudulent answer to an interrogatory in the application, and Section 9391, General Code (Section 3625, Revised Statutes) [now R.C. 3911.06], has no application").
Here, as part of his application that was incorporated into the life insurance policy, the decedent "promise[d] to tell the Company of any change in the health or habits of the Proposed Insured that occurs after completing this application, but before the Policy is delivered to me (us) and the first premium is paid." The decedent failed to fulfill that provision, as he did not disclose changes in his health known to him as a result of visits to physicians that occurred after he completed the life insurance application in February 1998. Accordingly, the trial court correctly determined that (1) R.C. 3911.06 does not apply in assessing the decedent's compliance with the policy terms, and (2) the decedent failed to comply with the conditions for obtaining insurance under the policy.
Moreover, under item four of "Part B: Agreement," also incorporated into the life insurance policy, a condition to the policy required that "the health and habits of the Proposed Insured remain as stated in this application" prior to the insurance taking effect. See Howle, paragraph two of the syllabus ("Where a life insurance policy contains a condition to the effect that no obligation is assumed by the company, unless at the date of the policy the insured is alive and in sound health, there can be no recovery upon such policy if it is made to appear upon the trial that the insured was not in sound health at the date of the policy").
Here, deposition testimony of the decedent's physicians, as well as his medical records, demonstrated the decedent's health had changed in the interim between his application for life insurance and the date the life insurance was to take effect. Because the decedent's health had changed, plaintiff is not entitled to recovery. Id. Moreover, because the provision at issue was incorporated into the life insurance policy, it became a term of the policy. Accordingly, the trial court correctly determined R.C. 3911.06 was inapplicable based on Howle. Although plaintiff contends the policy language stating "issued, delivered to, and accepted" is vague and ambiguous, plaintiff does not explain how those words lack a clear meaning in the context of the policy.
A couple of aspects of this case at first blush appear troublesome. Initially, we note Federal Kemper, according to the application, accepted an initial premium payment from the decedent at the time the application was completed, and apparently issued a conditional receipt, a copy of which is not in the record. Although Ohio courts have not so held, some courts have determined that if an insurance company accepts a premium with the application, the company grants immediate coverage. See Collister v. Nationwide Life Ins. Co. (Pa. 1978), 388 A.2d 1346. In some cases involving a more limited holding, Ohio courts have found insurance in some circumstances where a binding receipt or conditional receipt providing for interim insurance is given to the insured on payment of premium. See, e.g., Duncan v. John Hancock Mut. Life Ins. Co. (1940),137 Ohio St. 441. Even the broadest of holdings in Ohio cases does not create irrevocable insurance on payment of the first premium with submission of the application.
By their nature, however, cases discussing whether the payment of a premium creates coverage typically arise when the insured dies in the interim between application and issuance of the policy. By contrast, here the decedent did not die until after Federal Kemper actually issued the policy to the him; Federal Kemper later refused payment on the policy due to decedent's failure to disclose health problems that became known to him after the application was completed, but before the policy was issued. Thus the issue here is not whether Federal Kemper must provide insurance while it held the decedent's premium payment prior to issuing the policy, but whether Federal Kemper could refuse payment on the policy because the decedent failed to comply with the policy terms.
In a related issue, Federal Kemper took almost three months to process decedent's application, and in the period of that delay, the decedent learned of the health issues which should have been reported to Federal Kemper according to the policy terms. Again, cases discussing this issue frequently arise when the proposed insured dies before the policy is issued. See Cartwright v. Maccabees Mutual Life Insurance Co. (1976),398 Mich. 238 ("Acceptance on the part of the insurer may be implied where it accepts and retains an advance premium while delaying action on the application under circumstances inconsistent with rejection of the risk"). Even if the principle from those cases could be applied here, the record does not disclose facts on which we, or the trial court, could determine whether the delay was unreasonable. Moreover, we are unwilling to conclude that the delay here is unreasonable as a matter of law. Accordingly, plaintiff's first and second assignments of error are overruled.
Plaintiff's third assignment of error contends the trial court erred in granting Federal Kemper's motion that allowed the use of medical records and testimony from the decedent's physicians in support of Federal Kemper's amended motion for summary judgment.
At all times relevant to plaintiff's action, R.C. 2317.02 provided the following:
 The following persons shall not testify in certain respects:
***
 (B)(1) A physician or a dentist concerning a communication made by a patient in that relation or the physician's or dentist's advice to a patient, except as otherwise provided in this division, division (B)(2), and division (B)(3) of this section, and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.
 The testimonial privilege under this division does not apply, and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:
 (a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123. of the Revised Code, under any of the following circumstances:
 (i) If the patient or the guardian or other legal representative of the patient gives express consent[.]
Because R.C. 2317.02(B) provides that communications between a physician and patient are confidential, it is in derogation of the common law and therefore R.C. 2317.02(B) must be strictly construed. In re Miller (1992), 63 Ohio St.3d 99, 109, citing Weis v. Weis (1947),147 Ohio St. 416, paragraph four of the syllabus. The physician-patient privilege applies unless it is waived, and R.C. 2317.02(B) lists instances when waiver occurs. See In re Miller, supra. If a particular circumstance does not meet one of the waivers expressly set forth in the statute, the privilege is not waived. Id., citing State v. Smorgala (1990),50 Ohio St.3d 222, 223.
Under R.C. 2317.02(B)(1)(a)(i), if a patient gives express consent, then the physician-patient privilege can be waived. A patient may voluntarily waive the physician-patient privilege through a clause "in an application for or a policy of insurance." Nationwide Mut. Ins. Co. v. Jackson (1967), 10 Ohio App.2d 137, 140. Such a waiver must be in express terms and "a court will closely scrutinize the waiver in order to adequately protect the interests of the insured." Id.
Here, on February 27, 1998, as part of his life insurance application, the decedent agreed to the following:
 I hereby authorize: any licensed physician or medical practitioner; any hospital, clinic or other medical or medically related facility; any insurance company; the Medical Information Bureau; and any other organization, institution or person, that has any records or knowledge of me or my health, to give to Federal Kemper Life Assurance Company or Fidelity Life Association, or their reinsurers, any such information. This authorization is valid for two and one-half years from the date this form is signed. An exact copy of this authorization is as valid as the original.
Through those express terms, the decedent authorized his physicians and any medically related facility that had records or knowledge of his health to release information to Federal Kemper for a period of two and one-half years from the date the decedent signed the form.
Plaintiff contends the authorization clause did not constitute an express waiver of the testimonial privilege under R.C. 2317.02 and she cites to Jackson, supra, and this court's decision in Talvan v. Siegel (1992), 80 Ohio App.3d 781, as supporting authority. Both Jackson and Talvan are distinguishable.
In Jackson, the defendants refused to execute an authorization that would have allowed Nationwide Mutual Insurance Company to interview the defendants' physicians. Here, the decedent signed an authorization to allow Federal Kemper to access records and knowledge that his physicians had of him. Jackson is inapposite to the facts of this case.
Further, in Talvan, the authorizations to the physicians allowed defendant's counsel:
 [T]o examine and copy any and all charts, records, reports, consultations, tests, x-rays, radiology reports, test reports, surgery records, pathology reports, and/or autopsy reports, as applicable, with respect to your care, treatment, and/or evaluation of my medical condition. *** Id. at 788.
Accordingly, the authorization in Talvan was limited to examination and copying of treatment records. Here, the authorization the decedent signed permitted physicians and medically related facilities "that [have] any records or knowledge" to give information to Federal Kemper. (Emphasis added.) The decedent's signed authorization that permitted disclosure of records and knowledge is broader than the language of the authorization in Talvan.
Plaintiff's contention that language in the decedent's authorization is vague or unclear is also not persuasive. In Evans v. Occidental Life Ins. Co. of North Carolina (1982), 7 Ohio App.3d 286, 288-289, the First District Court of Appeals held that authorization language similar to the language in the decedent's authorization waived the physician-patient privilege under R.C. 2317.02. In Evans, the court considered the following:
 We hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of us or our health, to give to the Occidental Life Insurance Company of North Carolina any such information. A photographic copy of this authorization shall be as valid as the original. *** Id. at 288. (Emphasis added.)
Here, as in Evans, the language of the decedent's authorization permitted disclosure of records and knowledge by physicians and medically related facilities. Because the authorization was not limited to records, but included knowledge of the decedent's heathcare providers, the decedent expressly consented to waiving the physician-patient privilege under R.C. 2317.02. Plaintiff's third assignment of error is overruled.
Having overruled plaintiff's three assignments of error, we affirm the judgment of the trial court.
PETREE, J., concurs.
TYACK, J., dissents.